# IN THE COURT OF APPEALS OF IOWA

No. 24-0411
Filed May 22, 2024

**IN THE INTEREST OF R.C., L.C., and M.M.,**
**Minor Children,**

**M.N., Mother,**
    Appellant,

**C.C., Father of R.C. and L.C.,**
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Melody J. Butz of Butz Law Offices, PC, Center Point, for appellant mother.

John J. Bishop, Cedar Rapids, for appellant father of R.C. and L.C.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Kimberly Opatz of Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

The mother to three children—R.C., born October 2019; L.C., born May 2021; and M.M., born December 2022—appeals the termination of her parental rights. The father to R.C. and L.C. does the same.[1]

**I. Background Facts and Prior Proceedings.**

The family first came to the attention of the Iowa Department of Health and Human Services (the department) in 2021, when R.C. was just over a year old. In April of that year, concerns were reported that a person in the mother's home was smoking marijuana with R.C. present. L.C. was born the next month. In August, R.C. was seen playing in the street for thirty to forty-five minutes without any supervision; he was twenty-two months old at the time. The incident resulted in a founded child abuse assessment for denial of critical care by failure to provide proper supervision. The parents agreed to voluntary services through the department starting in October.

In July 2022, a child abuse assessment was founded for denial of critical care by failure to provide adequate shelter because R.C. had access to sharp knives and both children had access to old food on the floor. R.C. and L.C. were removed from the mother's home in August after another child abuse assessment was founded for denial of critical care by failure to provide adequate supervision. Law enforcement was called for a welfare check and forced entry into the home. Inside, they found the home in extreme disarray with the two children having access to screws and coins, an open and half-full bottle of Tylenol, and Cheetos

---

[1] M.M.'s father voluntarily terminated his rights; he does not appeal.

on the unclean floor; there were also plates with moldy food and trash on the floor. R.C. and L.C. were adjudicated in need of assistance (CINA) and placed in the custody of the department. After removal, L.C. tested positive for methamphetamine, although neither parent tested positive. M.M. was removed from parental custody in December 2022, the day after she was born. She was also adjudicated CINA and placed in the custody of the department.

The mother was offered two, two-hour visits each week with all three children. Visits were fully supervised through June 2023, at which point the mother progressed to semi-supervised visits. However, at a visit in July, a social work case manager dropped in and observed that the mother had placed M.M. in a crib with multiple items that could be hazards to her including loose clothes hangers, a candle, baby wipes, and clothing. In August, after only six weeks, visits with the mother returned to fully supervised. Visits moved to the service provider's office, rather than the mother's home. The father was also offered two, two-hour visits a week with R.C. and L.C.; he attended only twelve of the thirty-four supervised visits offered. He did not attend any visits after March 2023. In July, the father's sweat patch tested positive for methamphetamine, but he stated that the result was because he was handing people's medication to them. Throughout this time, the mother was not employed. The father worked one season with a carnival but was not consistently employed.

The State petitioned to terminate both parent's parental rights, and the juvenile court held a hearing in September on the petition. At the hearing, the mother testified that she has not worked since 2017 and supports herself through Social Security Disability payments. The mother added that at the time of trial,

R.C. was three years old.  The mother was never offered visits with just M.M. or just R.C. and L.C.  However, when asked at the termination hearing, "Did anybody ever have a conversation with you about the possibility of having the boys come home without [M.M.]?" the mother responded in the negative.  She agreed that she did not "know it was something that [she] could possibly consider or request."  She then waffled on whether she was asking for termination of her rights to only one of the children, responding to "It's not what you want, is it?" by saying, "No, but if given the option, yeah."  She then insisted that she could handle parenting all three children at the same time, but hedged that if others did not agree, she could handle just R.C. and L.C.  Lastly, in response to, "Are you asking that only the boys be returned to your care?" the mother stated, "No.  I'm asking for all three to be returned to my care, but if I had to choose between my three—I really don't want to—I'd have to choose the boys."

During the termination trial, the department social work case manager also testified.  She stated that the mother did not have a good understanding of what was appropriate for children of her children's ages and continued to struggle with supervision of all three.  At the core, the case manager clarified that safety concerns for the children remained prevalent throughout the pendency of the case.  In particular, this included having a clean home but also making sure the children were supervised appropriately and not exposed to dangers.  The case manager described struggles the mother had with getting the children to medical appointments or even making sure they were not choking on items left around the house, taking medications left in their reach, running from her, or playing with

knives left out. Despite all of the services offered over two years, the mother still seemed not to understand age-appropriate supervision for these young children.

Regarding the father, the case manager testified that he had spanked the children and held R.C. by the neck while yelling at him leaving red marks. R.C. was one year old at that time. Service providers also observed the father physically restraining the children during visits and avoiding interactions with R.C. The case manager had concerns for the father managing the stress of parenting the children and supervising them as well as for the children's safety. The father testified that he was "couch surfing" until he could get a job. He did not have any income at the time of the hearing, and he agreed that there was no place to send the children home to if they were returned to him the day of the hearing.

The court terminated the mother's parental rights to all three children pursuant to Iowa Code section 232.116(1)(h) (2024) and the father's parental rights to R.C. and L.C. pursuant to section 232.116(1)(g) and (h) in February 2024. The court also found that reasonable efforts had been made by the department to reunify the children with their parents without success. "Services to the family included supervision and services through the [department], Family Centered Services, supervised visitation/services, Solution Focused Meeting/staffings, family foster care, psychological evaluations, mental health treatment, medication management, substance abuse evaluations, drug testing, cognitive testing, Young Parent's Network, SafeCare, paternity testing, [and] protective daycare." Yet, "[d]espite all of the services supporting this family, virtually nothing has changed since it opened." The mother and the father separately appeal.

## II. Standard of Review.

We review the termination of parental rights de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). We give careful consideration to the court's factual findings and determinations based on in-person observations, but we are not bound by them. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). "[O]ur fundamental concern" in review of termination proceedings "is the child[ren]'s best interests." *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We first consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the children's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.* We review only those steps that are actually raised and briefed on appeal by the parent challenging termination. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996). Because each "parent's parental rights are separate adjudications, both factually and legally," *In re D.G.*, 704 N.W.2d 454, 459 (Iowa Ct. App. 2005), we address each parent's appeal separately.

## III. Mother's Appeal.

The mother asserts that (1) reasonable efforts were not made to reunify her and the children and (2) the juvenile court erred in terminating her rights to all three children instead of just M.M. or just R.C. and L.C. She also raises two other arguments in passing.

**A. Reasonable Efforts.** First, the mother claims that there were not reasonable efforts made to support reunification. "The State must show reasonable efforts as a part of its ultimate proof the child[ren] cannot be safely returned to the care of a parent." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). However, to preserve a challenge to reasonable efforts, our case law generally requires that a parent complain to the juvenile court directly "to demand other, different or additional services." *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999). Furthermore, a parent cannot challenge reasonable efforts for the first time on appeal or even first raise a challenge at the termination hearing. *See id.* A parent must alert the juvenile court of any perceived deficiency in services "at the removal, when the case permanency plan is entered, or at later review hearings." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). When a parent fails to timely request additional or different services, the parent waives any reasonable-efforts challenge. *Id.* Here, the mother never timely informed the court of any deficiency in services, so her reasonable-efforts challenge is waived.

**B. Termination of Rights to All Three Children.** Next, the mother argues that "it was never considered that she could have reunified with at least the boys or M.M. rather than terminating" her rights to all three children. And she concedes a second time that while she asked for visits with just M.M. or just R.C. and L.C., maintaining her parental rights to just M.M. or to R.C. and L.C. "was never allowed or considered as a permanency option." Her testimony on this point at trial was equivocal, and she did not formally request termination of her rights to only some of the children. As she did not squarely address this option, we are unable to now consider it for the first time on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532,

537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."); *accord In re C.G.,* No. 23-1234, 2024 WL 260926, at *2 (Iowa Ct. App. Jan. 24, 2024) (explaining that in termination-of-parental-rights cases a parent must still "raise an issue and secure a ruling on it to preserve it for appellate review"). Even so, this is not about selecting which children to parent and, as the juvenile court found, none of the children could be returned to the mother's home at the time of the termination hearing given the active safety concerns. Given this record, we do not address this issue on the merits.

**C. Other Claims.** Within her arguments, the mother asserts that the juvenile court erred in finding that the mother's rights to R.C. could be terminated under Iowa Code section 232.116(1)(h)[2] because he is over the age of three, but at the time of the termination hearing he was three years and eleven months old. Paragraph (h) encompasses a child "three years of age" which included R.C. at that time.[3] Iowa Code § 232.116(1)(h)(1); *see, e.g.*, *In re M.W.*, 876 N.W.2d 212,

---

[2] The court may order the termination of parental rights under paragraph (h) if it finds that all of the following have occurred:

    (1) The child is three years of age or younger.
    (2) The child has been adjudicated [CINA].
    (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
    (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents . . . at the present time.

Iowa Code § 232.116(1)(h). The mother only challenges the fourth element.

[3] Paragraph (h) is the appropriate ground for children up to the time they turn four years old, while paragraph (f) is the proper paragraph once a child reaches the age of four. *Compare* Iowa Code § 232.116(1)(h)(1), with *id.* § 232.116(1)(f)(1). For purposes of the termination statute, the age of the child at the last date of the

219 (Iowa 2016) (affirming termination of parental rights under Iowa Code section 232.116(1)(h) for a child that was three years and three months old at the time of the termination hearing). The mother also makes passing references to being closely or very bonded to the children. Mere mention of an issue, without further elaboration and citation to authority, is insufficient to preserve an issue for our review. *C.B.*, 611 N.W.2d at 492 ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review."); *accord In re J.R.*, No. 22-1470, 2023 WL 2148760, at *3 (Iowa Ct. App. Feb. 22, 2023) (finding that "sprinkled mentions of an issue" do not properly raise the issue for our consideration). Therefore, these other issues do not change our decision to affirm the termination of the mother's parental rights.

**IV. Father's Appeal.**

The father asserts that (1) the State failed to establish by clear and convincing evidence that his rights to R.C. and L.C. should be terminated and (2) termination of his rights is not in the children's best interests.

**A. Statutory Ground for Termination.** "There must be clear and convincing evidence of the grounds for termination of parental rights." *M.W.*, 876 N.W.2d at 219. But "we may affirm the . . . order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Here, we choose to focus on paragraph (h), which requires clear and convincing evidence that the children could not be returned to the father's custody

---

termination hearing controls. *See In re A.N.*, No. 15-1028, 2015 WL 5578311, at *2 n.2 (Iowa Ct. App. Sept. 23, 2015) ("The age of a child is determined as of the last day of the termination hearing." (citing *In re J.A.*, No. 13-0889, 2013 WL 5758054, at *3 (Iowa Ct. App. Oct. 23, 2013))).

at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4); *M.W.*, 876 N.W.2d at 223 (interpreting "at the present time" to mean "at the time of the termination hearing"). Now, the father claims that he could secure a two-bedroom apartment that he and the children could move into and, for that reason, they could be safely returned to his care. However, the father agreed that at the termination hearing he was then homeless, unemployed, and had submitted a drug test that was positive for methamphetamine three months prior. When asked if the children could be safely returned to his care at the termination hearing, the father agreed that he did not have a home that they could return to with him. Because the statute looks to whether the children cannot be returned to the parent "at the present time," which means at the time of the termination hearing, *In re A.M.,* 843 N.W.2d 100, 112 (Iowa 2014), and the State proved such was the situation here, the State presented clear and convincing evidence to support termination of the father's rights under paragraph (h).

**B. Best Interests.** First, we note that the strength of the parent-child bond is not one of the considerations in the best interests analysis, which is what the father emphasized in his best-interests challenge. *See In re A.B.*, No. 23-0235, 2023 WL 3335422, at *2 (Iowa Ct. App. May 10, 2023) ("In considering the best interests of the children, we are required to use the best-interests framework set out by our legislature. And that framework does not include the word 'bond.'" (internal citation omitted)); *In re E.S.*, No. 23-0590, 2023 WL 4104126, at *2 (Iowa Ct. App. June 21, 2023) ("Consideration of the parent-child bond is not a part of our best-interests analysis."). Setting aside the references to a bond between the father and the children, in considering the best interests of the children we "give

primary consideration to [their] safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]."  Iowa Code § 232.116(2).  As our case law provides, the defining elements in the children's best interests are the children's safety and need for a permanent home.  *In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially).

Here, the best interests of R.C. and L.C. support termination of the father's parental rights.  At the time of the termination hearing, not only was he unable to resume caring for the children, he had taken advantage of less than one third of the opportunities to visit with the children, attending no supervised visits after March 2023.  When the father did attend supervised visits, he physically restrained the children and was inattentive to their needs.  Even during the period he attended visits, he never progressed beyond fully supervised visits.  *See In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) ("[The mother] never progressed to unsupervised visits or trial home visits.  Without this necessary progression, we cannot say the children could have returned to the mother's care.").  Because the father was unable to provide for the children's safety and need for a permanent home and has not demonstrated any progress towards becoming able to do so, we find that the best interests of the children support termination, and we affirm the termination of his parental rights.

**AFFIRMED ON BOTH APPEALS.**